## IN RE McDONALD.

HABEAS CORPUS—ADJOURNMENT OF DISTRICT COURT OVER INTERVENING TERM IN ANOTHER COUNTY—LIBEL—INFORMATION—PUNISHMENT—CONSTITUTIONAL LAW.

1. In the absence of a statute prescribing the duration, or time for adjournment of district courts, such courts may adjourn to a distant day, even over an intervening term, or portion of a term, held in another county of the same district during the interval of adjournment. (Stirling v. Wagner, supra—followed.)

2. An information for criminal libel need not state that the accused knew the libel to be false.

3. Section 979 Revised Statutes, 1887, defining libel, was repealed by the Crimes Act of 1890.

4. No objection being made to the form of the innuendoes in the information, but it being asserted that the words employed were not libelous per se; Held, that the information being sufficient, and the libel unmistakable the meaning of the libelous expressions must be left to the jury, and they must be satisfied they are what they are alleged to be. Such meaning is a question for the jury and not for the court.

5. The language employed in a libelous letter must be understood in its ordinary and usual signification, and must be interpreted as men knowing all the circumstances would

generally understand it.  A person of ordinary understand-
ing would readily gather from the letter alleged in this case
to be libelous, that it charged one with knowingly receiving
stolen goods; and the language used was libelous per se.

6.   The statute (Sec. 33, Chap. 73, Laws 1890), providing as a
     maximum punishment for libel, a fine of one thousand
     dollars, to which may be added imprisonment in the county
     jail for three months, and another section of the same act
     (Sec. 7, as amended January 7, 1891), authorizing the im-
     prisonment of one committed to jail for non-payment of a
     fine or costs, until such imprisonment shall, at the rate of
     one dollar a day, equal the amount of such fine or costs or
     both, or the amount shall be otherwise paid or secured to
     be paid; Held, that under the circumstances of the case, a
     sentence imposing the maximum fine and imprisonment
     was not excessive; that the punishment was not cruel or
     unusual, and the constitutional inhibition of cruel and un-
     usual punishment (Art. 1, Sec. 14) was not violated; and
     that the imprisonment for non-payment of the fine cannot
     be considered as an imprisonment for debt.

7.   It is not the office of a writ of habeas corpus to correct
     errors or irregularities of a trial court.  If the omission
     from the judgment of the term or rate of imprisonment for
     the failure to secure or pay the fine imposed was erroneous
     it could only be reached by proceedings in error.

[Petition for writ filed April 6, 1893.  Decided May 13, 1893.]

John McDonald was confined in the county jail of Sweet-
water County, under conviction and sentence by the district
court for criminal libel.  He applied to the supreme court
for release upon habeas corpus.   The initial writ was granted,
ordering the sheriff to appear and show by what authority the
petitioner was held in custody, and to show cause, if any,
why the prayer of petitioner should not be granted.   The case
was heard on demurrer to the petition, and the petition was
denied.   The facts are fully stated in the opinion.

*E. J. Churchill* (by appointment of court), for petitioner.

Want of jurisdiction is a proper ground for habeas corpus.
(Ex parte Millington, 24 Kan., 214; Martin's case, 1 Bright
Dig., 1240.)   The statute fixed the time for the commence-

ment of the terms of the district court in each county. That, of itself, limits the term of court in each county—there is but one court and one judge in a district. (Ex parte Millington, supra.) The district court of Sweetwater County could not lawfully adjourn to a day beyond an intervening term in Carbon County in the same district. (Gregg v. Cook, Peck (Tenn.), 82; Archer v. Ross, 2 Scan., 303; Cooper v. Am. Ins. Co., 3 Colo., 318; Grable v. State, 2 Greene, 559; Davis v. Fish, 1 G. Greene, 406; Ex parte Lilly, 7 S. C., 374; Smith v. Chichester, 1 Cal., 409; Northwood v. Canfield, 34 Cal., 329; Bates v. Gage, 40 Cal., 183; Bank v. Withers, 6 Wheat., 106; State v. Montgomery, 8 Kan., 358.) Adjournments of courts to a distant day are highly impolitic, and ought not, except for very weighty and special reasons, to take place. (Harris v. Gest, 4 O. St., 470; Samuels v. State, 3 Mo., 78; Servis v. Dills, 17 Mo., 69; State v. Montgomery, supra; Carland v. Custer Co., 5 Mont., 599.) Consent cannot confer jurisdiction. (Molandin v. C. C. Ry. Co., 3 Colo., 173; Keene v. Whittaker, 13 Curtis, 248; Jewitt v. Hodgdon, 2 Greene (Mo), 335.) The court was without jurisdiction on account of fatal defects in the information. Material defects on the face of the information may be inquired into in a habeas corpus proceeding. (Church, 245; In re Conyell, 22 Cal., 178; Keayney's case, 55 Cal., 212.) Such defects go to the jurisdiction. (Ex parte Boland, 1 Tex. App., 159; Freeman on Judg., Sec. 678; Ex parte Liebold, 100 U. S., 376.) In repealing a statute, it is not enough to refer to original act by number of chapter of published laws. (People v. Hills, 35 N. Y., 449; People v. Briggs, 50 N. Y., 553; People v. Fleming, 7 Cal., 231; Pennington v. Woolfalk, 79 Ky., 13.) The crimes act of 1890 failed to define libel, the intent probably being to revert to the common law definition. Sec. 979, Rev. Stat. Wyo., did define it. This section was repealed in 1890 by mere reference to section, not to title, chapter and subdivision. So much of the former statute which is not repugnant to the laws of 1890 must stand, and the crime should have been so charged as to make out a statutory offense. The information, however, is not good if it intended to charge

libel as at common law. The letter complained of was not libel-
ous.    The innuendo states a libel, but that cannot be used to
put upon the defendant's words a meaning they will not bear.
If, rejecting the innuendo, the words are not actionable per se,
judgment must be arrested.    (James v. Rutlech, 4 Rep., 17;
State v. Mott, 45 N. J. L., 494;  Barham v. Neehersole, Yelv.,
21;  Barrett v. Long, 16 Eng. L. & Eq., 1;  Patterson v. Wilk-
inson, 55 Me., 42;  Gainsford v. Blatchford, 7 Price, 544.)
The following cases distinguish between libelous statements
and the writing in the case at bar.  (Cochran v. Melendy, 59
Wis., 207;  Bowe v. Rogers, 50 Wis., 598;  Mallory v. Pioneer
Press Co., 34 Minn., 521;  Hemphill v. Halley, 4 Minn., 233;
Bain v. Myrick, 88 Ind., 137;  Crocker v. Hoadley, 102 Ind.,
416.)  See 13 Am. & Eng. Ency. of Law, p. 333, et seq.
Whether the language constitutes libel is a question for the
court and not the jury.    (13 Am. & Eng. Ency. of Law,
p. 467.)  It was necessary to allege malicious intent to injure,
villify, or destroy the reputation of the one about whom the
letter was written, knowledge of the falsity by the writer,
and transmission of the letter to whom it was addressed.
(Heard's Cr. Law, p. 559;  Arch. Cr. Pl., 895;  Whart. Prec.,
p. 930.)    The sentence was excessive.

*Charles N. Potter*, Attorney General, for the sheriff.


Groesbeck, Chief Justice.

This proceeding is submitted upon the petition for the writ
as amended by consent and by leave of court, and the demur-
rer to the petition on behalf of the defendant and respondent,
the sheriff of Sweetwater County. The initial writ was granted
by this court, and the application disclosing that the petition-
er is without means to employ counsel to represent him, Ed-
mund J. Churchill, Esq., of the Cheyenne bar was appointed
to act for the petitioner herein.    The brief on the application
shows much labor and care in its preparation and has been
carefully considered.    The petition and application for the
writ relies chiefly upon errors alleged to have been made by
the committing magistrate before the trial, particularly in his

omission in forwarding the transcript of his record to the trial court within the time specified by statute. These matters are of no importance and were abandoned by counsel for the petitioner upon the hearing. The matters disclosed by the record which we are asked to consider will be disposed of in the following order:

1. The petitioner was tried, convicted and sentenced at an adjourned term of the district court for Sweetwater County, which began on the fourth Monday of September, A. D. 1891. This term was apparently adjourned over a term or a portion of a term of the district court in the same judicial district for Carbon County, which began on the second Monday in October following. The mittimus containing a copy of the judgment shows that the petitioner was sentenced at the adjourned term for Sweetwater County on the 7th day of December, 1891. The question involved here was presented to this court and was discussed at length in the case of Stirling v. Wagner, supra, and although the membership of this court has changed since that decision was rendered, which may account for the presentation of the question anew, we adhere to the ruling in that case, and hold such an adjournment over an intervening term or portion of a term of the district court for another county in the same district, valid. It was in accordance with the universal practice of district courts in this jurisdiction to so adjourn over a term or portion of a term. It was deemed unnecessary and unwise to disturb this practice, which had received such sanction of these courts, as such action on our part would result in disturbing and annulling too many judgments. Besides, there never was any statute in this jurisdiction prescribing the duration of any term of a district court, the length of its sessions, or when it should adjourn; and in the absence of some positive law to the contrary, a district court, being a court of general and superior jurisdiction, has power to adjourn to a distant day, even over an intervening term or portion of a term held in another county of the same district, during the interval of adjournment.

2. It is urged that the information does not state an of-

fense against the statute.    We think the information is suffi-
cient, as it employs the exact language of the statute in its
charging part.    In Re Wright Petitioner, 134 U. S., 136,
148; Cuddy, Petitioner, 131 Id., 280.    Omitting the caption
to the information it reads as follows: "That John Mac-
Donald, late of the county aforesaid, on the 8th day of Feb-
ruary, A. D. 1891, at and in the county aforesaid, did un-
lawfully and maliciously make, compose, dictate and write to
be published, and did unlawfully and maliciously procure to be
made, composed, dictated and published, and did unlawfully
and maliciously publish and knowingly and unlawfully aid in.
publishing and communicating a certain false and malicious
libel of and concerning one Walter L. Powell, of the tenor fol-
lowing:

"Green River, Wyo., Feb. 5th, 1891.
"To General Manager H. H. Clark, U. P. R. R.

"Sir,—The robberies of company property (from sealed
"cars) are as brisk as ever.    The thieves are waxing wealthy
"and bolder.    As an instance last Saturday night (the 31st
"ult.), about 6 o'clock, Martin Cleary, an ex-employe, threw
"a load of coal from a coal car, and in about an hour brought
"around a team, loaded the coal, and took it away.    Arrest
"the thieves, they don't care; they can get out of jail here
"when they want to.    Referring to the last escape of pris-
"oners, one of whom was held for robbery from the company,
"the sheriff now admits that he turned them out of the cage
"in the morning.    There is no mystery about their escape.
"One of the receivers (ex-Constable Powell) was entrusted
"with a key to the jail, but even had he opened the outer doors
"the prisoners could not have got away if the sheriff had
"not turned them out of the cage.    The sheriff went to Rock
"Springs early that day and away until night.    Charley Wil-
"son, engineer, now in hospital at Ogden, knows a good deal
"about the roberries and robbers.    He had charge of the
"switch engine here.                                    Nemo."

Meaning then and there in said writing hereinbefore set
forth that the said ex-Constable Powell, meaning the said

Walter L. Powell, did then and there commit the crime of receiving stolen goods, knowing the same to have been stolen, and also in said writing then and there meaning that said ex-Constable Powell, meaning the said Walter L. Powell, did then and there commit the crime of assisting prisoners lawfully confined in the jail of said county to escape therefrom, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Wyoming." No objection is made to the form of the innuendoes, but it is asserted that the words employed in the alleged libelous letter are not libelous per se. Referring to Powell, the libelee as a "receiver" must be read in the light of the entire screed and in connection with what precedes it. If the indictment had been demurred to in the trial court, the language of the letter upon which the action is predicated must be understood in its ordinary and usual signification, and must be interpreted as men, knowing all the circumstances, would generally understand it. Cochran v. Melendy, 59 Wis., 208, citing Weil v. Schmidt, 28 Id., 139; Hemphill v. Holley, 4 Minnesota, 238. A person of common understanding would readily gather from reading the letter that it charged Powell with being a receiver of stolen goods knowing them to have been stolen, although the charge of assisting prisoners to escape is not so clear. But the indictment being sufficient and the libel being unmistakable as to one of the charges, it is not necessary to pursue this inquiry in this proceeding farther.

The meaning of the libelous expressions must be left to the jury, and they must be satisfied that they are what they are alleged to be. This is a question for them and not for the court. 2 Bishop Crim. Proc., Sec. 799. The language of Lord Mansfield quoted by Mr. Bishop in this section of his work is pertinent here: "It is the duty of the jury to construe plain words and clear allusions to matters of universal notoriety, according to their obvious meaning, and as everybody else who reads them must understand them. But the defendant may give evidence to show that, in the case in question, they were used in a different or in a qualified sense. If no

such evidence is given, the obvious meaning to every man's understanding must be decisive." It is easy to determine the meaning of this letter by reading the whole of it, and no matter how bunglingly or craftily the terms were employed, there is no doubt that the language used was libelous per se.

The information does not state that the petitioner knew the libel to be false, but such an averment is unnecessary. 1 Bish. Crim. Proc., Sec. 783; Bish. Direction and Forms, Secs. 619, 620.

The law in force at the time of the commission of the offense does not define libel, as did Section 979 of the Revised Statutes of 1887, which was repealed by the Crimes Act of 1890, under which this information was drawn, and so we must look to the common law for the definition of the offense. It is thus tersely stated: "A libel on an individual is any writing, picture, or other like representation of a nature to blacken his reputation, or to hold him up to contempt or ridicule. It need not to be a crime actually accomplish this object; it may indeed be powerless; but it must be adapted to this end." 2 Bishop Crim. Law, Sec. 929. And while it does not require the imputation of a crime, such imputation will generally, perhaps always, render the publication libelous. Id., Sec. 930. Under this definition, it seems that the information states an offense. The former statute did not include in express terms a writing as libelous matter, but defined libel to be a "malicious defamation expressed either by printing or by signs, or pictures or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue or reputation of one who is alive, and thereby expose him or her to public hatred, contempt or ridicule." (Sec. 979, Rev. Stat. Wyo.) As this section was repealed as to offenses occurring after the passage of the repealing act, whatever limited scope the section might have had in excluding such a letter as the one set out in the information, it is useless to discuss as the common law definition, which includes a writing as libelous matter, must prevail.

3. The fine is complained of as excessive. A copy of the judgment of the court appears in the mittimus and is "that

the said defendant be imprisoned in the county jail of Sweet-water County, State of Wyoming, for a term of three months, and that he pay a fine of one thousand dollars, and that he stand committed to the jail of Sweetwater County, State of Wyoming, until the said fine shall be paid or secured to be paid, or he be otherwise legally discharged." The statute under which this sentence was imposed is found in Sec. 33 of the Crimes Act (Ch. 73, Sess. Laws 1890). It provides that the offender shall be fined not more than one thousand dollars, to which may be added imprisonment in the county jail for not more than three months. The former statute provided that whenever a fine shall be the whole or any part of a sentence that the court may, in its discretion, order that the person sentenced shall remain confined in the county jail until the amount of such fine and costs are paid. (Sec. 3330, Rev. Stat. Wyo.) This section was also repealed by the Crimes Act of 1890, doubtless because it was provided in Section 7 of that act that a person committed to jail for the non-payment of a fine or costs, or both, may be imprisoned therein, not exceeding sixty days, until such imprisonment, at the rate of one dollar and fifty cents a day, equals the amount of such fine and costs, or both, as the case may be, or the amount shall be otherwise paid or secured to be paid, when he shall be discharged. This Section 7 of the Crimes Act was amended by Chapter 30 of the Session Laws of 1890-1, which applied to future commitments, and which was approved and took immediate effect January 7, 1891, and before the offense charged in the information was committed, in such manner as to strike out the sixty days' limit of imprisonment and to reduce the rate of payment of the fine by imprisonment to one dollar per day. The constitutional provisions invoked are: "Excessive bail shall not be required, nor excessive fines imposed, nor shall cruel or unusual punishment be inflicted." (Art. I, Sec. 14.) "No person shall be imprisoned for debt, except in cases of fraud." (Art. I, Sec. 5.) "A fine imposed for the violation of laws for the punishment of crimes and misdemeanors is not such a debt as is within the scope of provisions of constitution and statutes

abolishing imprisonment for debt." 7 Am. & Eng. Cyc. Law, 993, citing Dixon v. State, 2 Tex., 481; State v. Mace, 5 Md., 337.

The imprisonment for the non-payment of the fine is generally considered as a means of enforcing compliance with the order of the court. "As we look at the case, the imprisonment is but an incident to the fine. This court has said, a justice of the peace, in fining a party for a contempt, may direct him to be imprisoned until the fine and costs are paid. Brown v. People, 19 Ill., 613. The principle is, inasmuch as the justice has power to fine, he has all the power necessary to make the granted power effectual, by imprisoning the offender until the fine shall be paid. The imprisonment as in this case (for the violation of a town ordinance), is only a consequence of the power to fine." Ex parte Bollig, 31 Ill., 96. In Bailey v. State, 87 Ala., 44, the court say: "We have repeatedly held that imprisonment of one convicted of crime, for the satisfaction of costs incurred by the State in his prosecution, or to which the State, if it were liable for costs, should be subjected, is not an infringement of that provision of the constitution, which provides that 'no person shall be imprisoned for debt,' " citing Bradley v. State, 69 Ala., 318. See In re Jackson, 96 U. S., 727; State v. Robinson, 17 N. H., 263; Luckey v. State, 14 Tex., 400.

Such imprisonment has not been held to be a violation of a constitutional provision that indefinite imprisonment should not be allowed. Ex parte Bryant (Fla.), 4 So., 854, where the court uses the following language upon this point: "It is contended that the sentence, in case the fine is not paid, amounts to perpetual imprisonment, and this is in conflict with the protection allowed by the clause italicized. This view rests upon the assumption that in committing the prisoner to custody until he paid the fine, that was part of the penalty imposed. But such assumption is not well founded. The penalty, or the punishment adjudged, was the fine; the custody adjudged was the mode of executing the sentence, that is, of enforcing the payment of the fine. This is in accordance with the rule of the common law, under which a sen-

tence of larceny to pay the fine was accompanied, as in the present case, with an order of commitment until the payment was made. Bish. Crim. Proc., Sec. 1132, 1135; Davis v. State, 22 Ga., 101; Hill v. State, 2 Yerg., 248. The commitment might be to the sheriff generally until payment of the fine. King v. Bethel, 5 Mod., 21." Our statute does not make the term of imprisonment indefinite or uncertain, as the rate of payment is fixed at one dollar per diem until the fine is paid. True, the petitioner may be imprisoned in the county jail for one thousand days, in addition to the three months' imprisonment, and has already undergone over fourteen months' imprisonment in payment of the fine. While this may be a severe sentence for a misdemeanor, it is the one fixed by statute. The provisions of the Crimes Act as they were originally enacted were more humane than the terms of the amendatory statute, as the imprisonment under a fine was limited to sixty days, but it was doubtless within the power of the legislature to establish a more rigorous rule. We are aware that the supreme court of California seems to announce a different doctrine in the case of Ex parte Rosenheim, 83 Cal., 184, overruling People v. Righetti, 66 Cal., 184, in holding that under statutory provisions of that State, that imprisonment for the non-payment of a fine was illegal when imposed in addition to the imprisonment allowed by law, but this decision rests upon the peculiar construction of the California statute. We think our statute is different, particularly in this case where the fine may be one thousand dollars, "to which may be added imprisonment in the county jail for not more than three months." Sec. 33 Ch. 73, Sess. Laws 1890. The fine must be imposed, and the imprisonment may be added. The fine itself is not excessive, and it does not seem that the imprisonment for its non-payment is "unusual." The evidence in the case, of course, is not before us, in this proceeding, but the offense was undoubtedly deemed a grave one by the judge imposing the sentence which was to the extreme limit of the penalty. The punishment formerly imposed by statute for the offense of criminal libel was a fine not exceeding five hundred dollars, or imprisonment in the

penitentiary not exceeding one year. Considered in the light of subsequent statutes making the minimum imprisonment in the penitentiary one year, the former punishment would be a felony, when imprisonment was added to the fine, and a more heinous statutory offense than the law in force at the time of its commission, which classes it as a misdemeanor. The fine is the highest one imposed by the crimes act for the punishment of felonies and misdemeanors, but it does not seem to be more than commensurate with the gravity of the offense. To blacken a man's reputation, to rob him of public confidence and his reputation is certainly as grave in morals as to filch his purse. Many a man by suspicions created by anonymous letters has been thrown out of employment, and ruined beyond recompense. The strong hand of the law should be felt by anonymous scribblers and venomous backbiters, who may not have the courage, however brutal or base it may be, to steal a horse or to wantonly assault another. "With the policy of the law, it is not our province to deal. That belongs to the legislature, which is composed of representatives direct from the people, and who alone have the right to voice the sentiments of the people in the public enactments." People v. Morris, 80 Mich., 637. The constitutional provisions aimed at cruel and unusual punishments were probably intended to prevent the imposition of obsolete, painful and degrading punishments, such as the whipping post, the pillory, and such as making capital a grade of offenses like larceny, forgery and the like. "Probably any punishment declared by statute for an offense which was punishable in the same way at the common law could not be regarded as cruel or unusual, in the constitutional sense." Cooley Const., Lim. (4th Ed.), 408. As was said in the case of People v. Morris, supra: "But for the disposition of this case, we may adopt the rule contended for, and then we must find (in order to declare the law unconstitutional) that the punishment provided by the law is so disproportionate to the offense as to shock the moral sense of the people. *  *  * Under most of our criminal laws, cases may arise where the punishment inflicted might be considered cruel, but that does

not condemn the law. The judge in such case has acted within the jurisdiction of (a) constitutional law, and other means must be resorted to to right the wrong.    Appellate courts cannot interfere if the proceedings have been regular. The law itself must therefore be cruel or unusual to warrant the interposition of the courts." It was held in this case that a minimum imprisonment of three years for horse stealing was not a cruel or unusual punishment, although under other statutes of the State the larceny of other property of like value was punished by imprisonment for only one year.

We do not think that the fine imposed upon the petitioner by the trial court was excessive, nor the punishment growing out of the failure to pay or secured to be paid that fine is cruel or unusual, nor that the imprisonment for the non-payment of the fine can be considered as an imprisonment for debt.

4.    The judgment of the court does not in itself fix the term or rate of imprisonment for the failure to pay or secure to be paid the fine imposed, but if this were erroneous it could only be reached by proceedings in error. It is not the office of a writ of habeas corpus to correct errors or irregularities of a trial court.    The writ of habeas corpus is not a proceeding for the correction of errors.    It is in its nature a civil process and it cannot be converted into a remedy for the correction of mere errors of judgment or of procedure in the court having jurisdiction and cognizance of the criminal offense.    Ex parte Frederich, decided by the Supreme Court of the United States April 24, 1893, citing Ex parte Lange, 18 Wall., 163; Ex parte Siebold, 100 U. S., 371; and other cases.    Our habeas corpus act contains this restrictive provision:    "It is not permissible to question the correctness of the action of the grand jury in finding a bill of indictment, or a petit jury in the trial of a cause, nor of a court or judge when acting within their legitimate province and in a lawful manner."    Rev. Stat. Wyo., Sec. 1299.    The trial court undoubtedly acted within its legitimate province, for it had jurisdiction of the offense and of the person of the offender.    With the same statutory provision narrowing the scope of the inquiry in habeas corpus

as ours, the supreme court of Iowa in Elsner v. Shirgley, 45 N. W., 393, says in construing the meaning and effect of the words "in a lawful manner:" "It cannot be said that the court was not acting in a lawful 'manner' in the sense in which the word 'manner' should be understood. If it be understood that a court is acting in an unlawful manner, within the meaning of the statute, when it commits a reversible error, then the restrictions as to questioning the actions of the court are of no avail, for habeas corpus would lie for errors in the admission of testimony, or in giving or refusing instructions, and the word 'manner,' if given its most comprehensive meaning would include such actions. But we well know that such is not the design of the law. 'Manner' has reference to the method or mode of acting more than to the degree of perfection or correctness in the conclusion or results arrived at. The statute seems to have reference to the methods or means of obtaining results, and if a court observes such methods or means it may be said to be acting in a lawful manner, although it may err in the application of legal principles to such an extent as to involve reversible error. It is not, of course, to be understood that a court has acted in a lawful manner when the judgment it pronounces is absolutely void, for such a judgment has no support in the law. Neither the law in its substance nor 'manner or form' can aid it. But if it is merely voidable it has support until set aside in a proper proceeding." The rate of imprisonment fixed by the Iowa statute in case of non-payment of a fine is three and one-third dollars per day, and in the case quoted from, the rate or time of imprisonment was not fixed in the sentence and judgment of the trial court; yet it was held that the legality of the sentence in this respect could not be the proper subject of inquiry on habeas corpus. People v. Foster, 104 Ill., 156. The Iowa case is parallel to the one at bar and is decisive in this proceeding. The fine not having been satisfied by imprisonment, according to the statute, the petitioner is without means of relief in this proceeding. As he expressly waived his right to be present at this hearing, under the statute, he is still in the custody of the sheriff of Sweet-

water County, and no order of this court is necessary to re-
mand him.  The demurrer to the petition is sustained and
the petition is dismissed.

CONAWAY and CLARK, JJ. concur.