**Clayton BLAKEMAN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 87–281.

Supreme Court of Wyoming.

May 6, 1988.

Steven E. Weerts, Sr. Asst. Public Defender, Public Defender Program, for appellant.

Joseph B. Meyer, Atty. Gen., John Renneisen, Deputy Atty. Gen., and Mary B. Guthrie, Sr. Asst. Atty. Gen., for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

## ORDER DENYING PETITION FOR REVIEW ON WRIT OF CERTIORARI

This case came on before the court upon the Petition For Review on Writ of Certiorari filed herein on behalf of the Petitioner, Clayton Blakeman, on April 6, 1988; and the court having reviewed the file, the record, the Petition For Review on Writ of Certiorari, and having carefully considered the matters presented therein, finds that the Petition For Review on Writ of Certiorari should be denied, and it therefore is,

ORDERED that the Petition For Review on Writ of Certiorari be, and the same hereby is, denied.

THOMAS, J., dissents.

URBIGKIT, J., files a dissenting opinion.

URBIGKIT, Justice, dissenting.

Tendered for appellate review by this disposition of an appeal and petition for writ of certiorari are two specific United States Supreme Court decisions involving constitutional rights which we now choose to ignore. From this order denying the petition for writ of certiorari, I respectfully dissent. This court should not so casually disregard not only the Wyoming and United States Constitutions, but also *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed. 2d 821, reh. denied 470 U.S. 1065, 105 S.Ct. 1783, 84 L.Ed.2d 841 (1985); and *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).

## I. FACTS

In mid-summer 1987, appellant Clayton Blakeman, while awaiting parole papers, was on temporary leave status to visit his home in Gillette from penitentiary confinement at the Wyoming State Honor Farm in Riverton. On July 10th he was unfortunate in being observed in erratic driving, as then arrested for driving while under the influence of intoxicating beverages, a second offense. Although, upon request, an attorney was appointed to represent him, Blakeman appeared pro se before the county court and entered a plea of guilty to the misdemeanor offense.[1] The sentence, as then orally announced, included confinement for seven days to run concurrently with penitentiary sentence, a $200 fine and $20 court costs, with a year to pay. In addition, as part of the sentence, he was orally ordered to pay "fifty dollars" ($50.00) to the victims of crime commission within ten days." Pursuant to pro se appearance and plea, the judgment and sentence was signed and filed *on July 23, 1987.* In order to get the apparently non-available attorney, Blakeman, on June 10th, had filed an "affidavit and order for court-appointed counsel" reflecting $14 in cash and no other assets.

According to his later testimony, Blakeman was taken from the Campbell County Jail in Gillette within four hours of entry of the guilty plea and returned to the Wyoming State Penitentiary. At Rawlins, he was held in segregation to commence service of the remainder of his original sentence since the anticipated parole had apparently been withdrawn by virtue of the DWUI offense.

On the first day following filing of the DWUI sentence, July 28, the county attorney filed a motion for an order to show cause reciting:

"1. On the 10th day of July, 1987, the defendant was assessed a fifty dollar ($50.00) surcharge for victims of crime and was to pay said fee within ten (10) days of July 10, 1987.

---

**1.** The basis for the pro se appearance, plea and sentence on the date of offense without counseled assistance is undisclosed in this record.

"2. As of July 23, 1987, the County Court of Campbell County has not received said assessment from the defendant.

"3. It is in the best interest of justice that an Order to Appear and Show Cause be issued for the above named defendant."

On that same day, as responsive to the filing, the county court entered an order to show cause to Blakeman, with a scheduled hearing on August 17, to answer why he should not be held in contempt for nonpayment of the $50.[2]

Appointed counsel, provided by the July 10th designation order, now entered an appearance and Blakeman was returned from the Rawlins penitentiary segregation to explain.[3] Resulting from the show cause, first incurred were expenses and penitentiary guard transportation costs for travel from Rawlins to Gillette as a 506 mile round trip, with a hearing then requiring the participation of a public defender, a public prosecutor, a publicly paid county judge, utilization of a fee reporter and appearance by two other public witnesses. Later pursued was first a district court appeal and now this Supreme Court proceeding of attempted appeal and petition for review by petition for writ of certiorari.

At the hearing, in justifying the nonpayment which, as a matter of record, was already determinable since he did not have the money,[4] Blakeman explained:

"Q. Mr. Blakeman, where are you currently living or residing?

"A. Wyoming State Penitentiary.

"Q. How long have you been there?

"A. Thirty-eight days.

"Q. Are you the same person that pled guilty to the DUI back on July 10th of this year?

---

2. It is noteworthy that both the county attorney and the county judge waited until entry of the sentence to cite for non-performance contempt although, by their conception, Blakeman had been in contempt on July 21, or six days before he was effectively sentenced by entry of an actual order. See *Broadhead v. Broadhead*, Wyo., 737 P.2d 731 (1987). Rule 33(b), W.R.Cr. P. Cf. *Chapman v. State*, Wyo., 728 P.2d 631 (1986).

3. The surcharge provision, as derived from § 1–40–119, Ch. 154 S.L.W.S.1987 provides:

"(a) In addition to any fine or other penalty prescribed by law, a defendant who pleads guilty or nolo contendere to, or is convicted of, the following criminal offenses shall be assessed a surcharge of not less than fifty dollars ($50.00):

"(i) Any crime enumerated in W.S. 6–1–101 through 6–10–203;

"(ii) Any violation of W.S. 31–5–225, 31–5–229 or 31–5–233;

"(iii) Any violation of W.S. 35–7–1001 through 35–7–1057.

"(b) The surcharge enumerated in subsection (a) of this section shall be imposed upon any defendant for whom prosecution, trial or sentence is deferred under W.S. 7–13–203 and 7–13–301 or who participates in any other diversion agreement.

"(c) Under no circumstances shall a court fail to impose the surcharge required by subsections (a) and (b) of this section.

"(d) The surcharge shall be paid within ten (10) days of imposition. Failure to comply is punishable as contempt of court. Contempt proceedings or other proceedings to collect the surcharge may be initiated by the prosecuting attorney or by the court on its own motion.

"(e) Monies paid to the court by a defendant shall be applied to the surcharge before being applied to any fine, penalty, cost or assessment imposed upon the defendant. The proceeds from the surcharge imposed by this section shall be remitted promptly by the clerk of the court to the commission for deposit in the account."

4. For inefficiently obligating the expenditure of public funds and effort, this case must be a prize example. With present appeal costs, and further proceedings in some court that will inevitably follow, thousands of dollars of public funds will have been expended and people utilized in the effort to collect the $50 that the criminal defendant did not pay since he did not have the money. The exuberance of wastefulness in inefficient legislation is at least noticeable. Excluding constitutional constraints, it is absurd for the legislature to seek to impose a burden on the judiciary of requiring payment of assessments to the Victims Compensation Fund, where impossible with most defendants without funds by sentencing date unless bonded out so that they can commit another offense. In addition to everything else, if Blakeman does spend six months in the Campbell County jail for contempt, the public cost could additionally total $20 to $30 per day or $3,600 to $5,400. It is possible that this one case may cost the public as much as most collection to the fund may total from persons who are able to pay for an entire year. Surely, a few of these cases will create a heavy burden on the undeserving taxpayer.

"A. Yes, sir.

"Q. What was your reason for being up here at that time?

"A. I was on furlough from the Honor Farm, awaiting my parole papers.

"Q. When you pled guilty on July 10th you were also imposed a two hundred dollar fine; is that correct?

"A. Yes, sir.

"Q. And ordered to pay fifty dollars within ten days?

"A. Yep.

"Q. Have you had any money to pay that fifty dollars?

"A. Where would I get any money? I mean no, I haven't.

"Q. You've been in maximum down there?

"A. Segregation.

"Q. Were you transported back down to the State Penitentiary after your guilty plea here?

"A. Within four hours.

"Q. Have you been there ever since?

"A. Ever since.

   *    *    *    *    *    *

"THE COURT: *The Court will, after the testimony of the defendant, strike the payment of fines of two hundred dollars plus the twenty dollars court costs because he does have an inability to do so from the testimony given.*

"MR. FULLER [Assistant County Attorney]: Fine and court costs?

"THE COURT: Fine and court costs."
(Emphasis added.)

### II. CONTEMPT PENALTY CONFINEMENT SENTENCE

Eschewing argument about imprisonment for debt as presented, since all recognized that Blakeman did not have the $50, the court then observed:

"THE COURT: Well, as to the issue of separation of State and separation of powers, the Court finds that it is up to the Court or the Prosecutor to bring this act, and therefore we're not mandated to do that, to bring the contempt matter.

"The statute itself is clear. It says that under no circumstances shall a Court fail to impose the surcharge required by Subsection A and B.

"The surcharges shall be paid within ten days of imposition.

"The argument, Mr. O'Connell, as to debtor's prison, I think is probably quite good.

"Except the State does have the right by its police powers to override the Constitution; I quote *State versus McAdams,* in that matter, in order to maintain order and preserve an orderly society.

"Not necessarily do I agree, but that is what they have said.

"The Court does find that there was an Order, that the Order was valid as to this term, that the defendant did have knowledge of that Order.

"The fourth element is that he failed to obey; yes, he did. By nature of the statute in itself, the Legislature has overrode that.

"Was his failure to obey contemptuous? And that is apparently to this Court no longer an issue, as to the surcharge on the family violence.

"I do find that it is not a fine as such, it is a revenue collecting matter, such as court costs, et cetera.

"I would like to strike that, but I cannot do so by statute, and I am not going to violate one of the statutes of the State of Wyoming."

and determined:

"The Court does find that the defendant is in contempt of court by failure to pay the surcharge, and will sentence the defendant to six months in the County Jail for that contempt.

   *    *    *    *    *    *

"THE COURT: The defendant is back in the custody of the State Penitentiary. Court is in recess."

The order when entered on September 1, recited and decreed:

"1. That there was a lawful order.

"2. That the order was valid as to the term requiring payment of the victim's surcharge within ten (10) days.

"3. That the defendant did have knowledge of that order.

"4. That the defendant failed to pay the victim's surcharge within ten (10) days.

"5. That the defendant is in contempt of Court by failure to pay the surcharge.

"IT IS THEREFORE ADJUDGED AND DECREED by the Court, that the defendant, Clayton Blakeman, is guilty of contempt of Court which occurred on or about the 23rd day of July, 1987, in the County of Campbell and the State of Wyoming.

"IT IS THE SENTENCE OF THE COURT that the defendant shall be incarcerated in the Campbell County Detention Center for a period of six (6) months for the offense of contempt of Court."

An appeal was promptly taken from that decision to the district court where argument under *Bearden v. Georgia*, supra, was made by the public defender. The order affirming the county court finding of contempt was entered by the district court as appellate tribunal on October 9th, stating in part:

"1. The *Bearden* case is distinguishable from the present case in that the *Bearden* case dealt with revocation of probation whereas the present case deals with contempt proceedings.

"2. There was a sufficient basis for the County Judge to find that the defendant's failure to pay was willful, and not excusable."

The lower court's casual differentiation of the client's compensation fund assessment from fines and restitution escapes me. See *Bearden v. Georgia*, supra; *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). A surcharge on the criminal penalty which funds crime victims' compensation is a form of punishment and is a fine. *State v. Champe*, Fla., 373 So.2d 874, 880 (1978). Although this court has previously held a fine is not a debt, *In re MacDonald*, 4 Wyo. 150, 33 P. 18 (1893), 95 years have passed since that decision and I have seen the fallacy in that view as applied to the

reality faced by today's indigent criminal defendant. Additionally, the decisions of the United States Supreme Court on the constitutional issue are determinative. The effect in this case no differently results in penal confinement than would in the case of any other non-compliance with an impossible condition. As such, we are faced with imprisonment for debt under Wyoming Constitution, Art. 1, § 5, "No person shall be imprisoned for debt, except in cases of fraud."

" * * * [I]f the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." *Bearden v. Georgia*, supra, 461 U.S. at 667–668, 103 S.Ct. at 2070.

Simplistically, if § 1–40–119 is to be applied as was done in this case in ignoring ability to pay so that confinement results from poverty, then the state statute is patently unconstitutional. I would rather conclude that effectuation of any provisions of confinement are subject to judicial good sense and the penal cost confinement constraints of *Bearden*. I would not attribute to the legislature an object of passing an obviously unconstitutional law as further including a characteristic of clear economic absurdity. *No one has found a way to repeal a basic economic law that ability to pay is required to create an opportunity to collect.*

### III.  BELATED APPEAL

The next problem presented here is the belated appeal. In the 1987 session of the Wyoming legislature, § 5-2-119, Ch. 132 S.L.W.S. 1987 was enacted:

"Notwithstanding any other provision of law, any case originating in a municipal court, a justice of the peace court or county court may be appealed to the district courts and thereafter to the Wyoming supreme court only if the supreme court grants a writ of certiorari agreeing to hear the appeal. The Wyoming supreme court shall adopt procedures under which the court will grant or deny appeals to the court in such cases and

provide the standards and extent of review."

This statute, initially for Wyoming jurisprudence, denies rights of automatic appeal to this court in every case. Pursuant to that statute, Rule 13.01, W.R.A.P. was submitted to the statutory rules advisory committee and following review, adopted July 30, 1987 with an effective date of October 20, 1987 as providing for discretionary appeal by a writ of certiorari where a prior district court appeal was involved. Since this case had been determined by first appeal to the district court, the second discretionary appeal rule specifically applies.[5]

Clearly, Blakeman, while residing in the Rawlins penitentiary, although to be assisted by appointed counsel, cannot have individually been expected to be aware of the deadline date for appeal of October 20. And so as dated October 21, and filed October 26, the public defender then filed a notice of appeal for him with leave from the district court to proceed with the appeal in forma pauperis.

The proceeding was filed in this court as an appeal on December 4, 1987 and appellant's brief was filed February 23, 1988. On March 24, the State at that date, instead of filing appellee's brief, moved to dismiss since the appeal was out of the October 20, 1987 rule deadline and "[a]ppellant did not file a petition for writ of certiorari in this action * * *." Responsive thereto, this court entered an order of dismissal of the appeal on April 9, 1988. No *Evitts v. Lucey* consideration was given. Pending business is now circumscribed by this court's decision to deny the certiorari petition which stated to us:

"COMES NOW, the Petitioner, Clayton Blakeman, through his attorney, Steven Weerts, and moves this Court to grant a Writ of Certiorari. This writ is made pursuant to Article 5, Section 3 of the Wyoming Constitution and Rule 13.01 of the Wyoming Rules of Appellate Procedure.

"Petitioner has met all the requirements for review of certiorari in the appeal and brief that has been filed in this case. The only item lacking in the appeal that was filed is the title 'Writ of Certiorari.'

"Petitioner contends that there are special and important reasons for considering this case. The district court in its appellate capacity has decided a question of substance not heretofore determined by the Supreme Court. In addition, this case involves an important state question that has not been determined by the Supreme Court and the issue is of great public importance.

"In *Wright v. State*, 707 P.2d 153 (Wyo. 1985), the Court granted a writ of certiorari after an appeal in the case had been heard. The Court granted the writ in *Wright* to prevent a failure of justice.

"In the present case, justice requires the Court to grant a writ of certiorari and Petitioner requests the Court to accept the brief and paperwork on appeal as the basis for the writ of certiorari."

No response to the petition for writ of certiorari as permitted by Rule 13.02(f), W.R.A.P. was made by the office of the Attorney General within the ten day period provided, and consequently this court now rejects the constitutional issue petition presented without filed objection from the State as respondent. I dissent from denial of consideration of the petition for certiorari, since petition rejection results in present disregard of *Evitts v. Lucey*, supra, and *Bearden v. Georgia*, supra, the Fifth and Fourteenth Amendments to the United States Constitution, and Art. 1, § 3; Art. 1, § 5; and Art. 1, § 6 of the Wyoming Constitution.

It is this *Evitts v. Lucey* problem that more directly causes my present concern. In effect in this case, on first occasion since I have been on this court, the majority will deny due process to the convicted defendant in lost appeal because of the attorney's failure to promptly and properly file the notice of appeal. Denial of defendant's

---

5. Apparently some of the members of the Wyoming bar have not become familiar with rule adoption as evidenced by the number of district court appellate decisions which have been presented for second appeal here at a date since October 20, 1987.

constitutional rights is, I would find, not only initially improper but also now sufficient to provide cause for relief through the Rule 13.01 writ of certiorari. See *Wright v. State*, Wyo., 707 P.2d 153 (1985).[6] This specific subject has been directly addressed by this court in unanimous decision within the past two months. *Foote v. State*, Wyo., 751 P.2d 884 (1988).

## IV. CONCLUSION

I would grant the writ of certiorari in lieu of the belated notice of appeal or reverse the dismissal of the appeal on the basis of the *Evitts v. Lucey* defect and

direct the attorney general's office to file appellee's brief so that the case can be considered on the record presented. Unless something new can be added in fact or legal reasoning, the contempt penalty consisting of a six month jail sentence should be reversed.

---

**6.** Since the present proceeding is only here on contest to the six months' contempt confinement sentence, I need not address an issue obvious in the record as whether there was a legitimate initial sentence which apparently arose from a pro se plea in the absence of appointed counsel. This case most dramatically demonstrates the need for assistance of counsel in that the "at risk" concerns of the accused driver were not solely presented from that offense but rather as implicit in revoked parole, penitentiary confinement and then finally, six months in the county jail for non-payment when in the penitentiary because his anticipated parole had been withdrawn. Under any consideration, the uncounseled guilty plea within the circumstances presented was at least improvident.