**Kenneth EIDE, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–371.**

Court of Criminal Appeals of Oklahoma.

June 18, 1976.

Mordy & Clark, by James Clark, Ardmore, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Douglas L. Combs, Legal Intern, for appellee.

MEMORANDUM OPINION

BUSSEY, Judge:

Appellant, Kenneth Eide, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Carter County, Case No. CRF–75–37, for the offense of Lewd Molestation, in violation of 21 O.S.1971, § 1123. Jury trial being waived, the trial court fixed his punishment at fifteen (15) years' imprisonment,

and from said judgment and sentence an appeal has been perfected to this Court.

At the trial the testimony of the six year old alleged victim, who was five years of age on the date of the offense, was that defendant called her to a room of a small building one evening while she was playing with his step-children. Defendant there removed her clothes and had her lay on a sheet spread upon the floor. Defendant laid on top of her while moving against her body with his penis between her legs and then apparently ejaculated with his penis in her mouth. The child subsequently spit the semen from her mouth in a nearby bathroom. Her testimony further indicated that she suffered some injury while being molested. Although defendant threatened to kill her if she reported the incident to anyone, the child informed her mother that same evening as well as the authorities and Dr. Mannerburg.

Don Mannerburg, M.D., next testified that at about 10:30 p. m. on March 22, 1975, he examined the alleged victim who he found initially to be quite upset. Upon inquiry to determine the nature of an appropriate examination, the child related that she had been sexually molested and the manner of the assault. The examination revealed very recent injuries, as follows: hemorrhage under the skin in the corners of the mouth; a bruise about four inches square upon the left lower abdomen and inguinal area, or where the leg joins onto the trunk of the body at the front; a great deal of redness and irritation or chafing around the inner thighs and perineum, or the area outside the vagina.

The mother of the alleged victim then testified that defendant had been doing some carpentry work at her home on March 22, 1975, and when he quit at about 4:00 p. m. her daughter and another child went to defendant's home to play with other children there. The witness had been invited to the home of defendant and his wife for supper that evening and arrived there shortly before 6:00 p. m. Upon leaving their home about one-half hour later,

her daughter was disturbed and related that she had been molested and threatened by defendant. After subsequently returning to defendant's home and informing him of her intentions, the witness reported the incident to authorities that same evening.

Wayne Warthen, an investigator for the offfice of the District Attorney, next testified and described the alleged victim as being emotionally upset when he interviewed her at the police station on the evening of March 22, 1975. As a result of that discussion, the witness questioned the forty-one year old defendant later that evening at the police station after advising him of his rights, and defendant denied the subject charges.

Bill Culley, Assistant Chief of Police for the Ardmore Police Department, then testified as the final witness for the State, that defendant was found in a small building to the rear of his home on the night of March 22, 1975, and then stated that he had been expecting the officers.

Louise Eide, a former wife of the defendant, first testified for the defense that she visited in defendant's home from about 3:00 to 6:30 p. m. on March 22, 1975. Her testimony in direct examination tended to establish that defendant was within her presence during this period and did not enter the small building at the rear of the home with the alleged victim. However, in cross-examination she testified that she did not devote close attention to the small building, and before having supper she and defendant's wife went to the store for twenty to twenty-five minutes leaving defendant alone with the children.

In testifying as the final witness in his behalf, defendant denied molesting the alleged victim and being alone with the child, but otherwise generally acknowledged the previously described circumstances surrounding the offense. Defendant explained that the small building in which the assault purportedly occurred was used as a bedroom where he and his wife slept upon sleeping bags since both suffered from problems with their backs.

Contrary to the testimony of the previous defense witness, defendant denied being left alone with the children when she and his wife went to the store. Defendant testified that he thought the children had gone to the store with Louise Eide and his wife, but further testified that in any event the alleged victim was not left in his company. As a possible motive for the accusation, defendant testified that the alleged victim became quite indignant when he declined to allow her to spend the night at his home with her older sister, and the mother of the children had asked defendant and his wife to baby-sit with both children since she was planning to go out for the evening. Defendant explained that he refused to permit the alleged victim to stay overnight because he was tired and his wife was not feeling well, but had agreed that her sister could spend the night there since she was old enough to manage herself. Defendant also testified that the mother of the alleged victim threatened him with a pistol when she returned to his home later that evening.

In the first of the two assignments of error, the attorney retained to represent defendant following the trial of this cause contends that defendant was deprived of the constitutional right to the effective assistance of trial counsel. Defendant alleges in several particulars that his appointed attorney failed to adequately consult, advise, prepare and otherwise represent him in the proceedings before the trial court. Upon presentation of defendant's Motion for New Trial, each of these allegations were carefully considered and rejected by the trial court. Since the rather extended ruling of the trial court is clearly supported by the record presented, we deem a reiteration of these allegations to be unnecessary.

■ We have repeatedly held that relief upon the ground of ineffective counsel will be granted only when the trial is a farce or mockery of justice, or is shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation. The burden is clearly upon the defendant to establish inadequate representation, and this burden is not sustained by simply pointing out possible errors in counsel's judgment or lack of success in defense. Neither hindsight nor success is the proper measure for determining the adequacy of legal representation. See, *Jones v. State*, Okl.Cr., 513 P.2d 1402 (1973); *Ellis v. State*, 430 F.2d 1352 (10th Cir., 1970), cert. den. 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546; and *Williams v. Beto*, 354 F.2d 698 (5th Cir., 1965). Accordingly, we are of the opinion that this assignment of error is without merit.

■ Upon the theory that the victim was an accomplice to the crime of which he was convicted, defendant argues in the only remaining assignment of error that his conviction cannot be sustained since the testimony of the victim was not corroborated by other evidence tending to connect him with the commission of the offense. See, 22 O.S.1971, § 742. We are of the opinion the contention that the young victim was an accomplice to the lewd molestation of herself is patently frivolous. With regard to the necessity for corroboration in such cases, this Court stated in the first paragraph of the Syllabus to *White v. State*, Okl.Cr., 268 P.2d 310 (1954):

"A conviction for a violation of Title 21, § 1123, O.S.1951, for lewd, indecent acts by an adult person as to a child under 14 years of age may be sustained upon the uncorroborated evidence of the prosecutrix, nevertheless in a case where the evidence may appear inherently improbable and almost incredible, there must be corroboration by other evidence as to the principal facts to sustain conviction."

In further discussing the necessity for corroboration in such a prosecution, we held in *Miller v. State*, Okl.Cr., 418 P.2d 220 (1966):

"In other words, the testimony of the prosecutrix would have to be *inherently*

*improbable and almost incredible* before further corroboration would be necessary." [Emphasis original]

Also see, *Still v. State*, Okl.Cr., 484 P.2d 549 (1971) and *Davis v. State*, Okl.Cr., 272 P.2d 478 (1954). While as might be expected the testimony of the six year old victim in the present case did vacillate in certain respects, the child steadfastly maintained that defendant sexually molested her under the circumstances and in the manner about which she testified despite thorough cross-examination, and we do not find her testimony to be inherently improbable and almost incredible. Further, the physical examination furnished independent evidence sufficiently commensurate with the corpus delicti of a sexual assault of a nature described by the victim to operate as corroborative evidence of the principal facts involved. We therefore hold this assignment of error to likewise be without merit.

For the above and foregoing reasons, the judgment and sentence appealed from is, accordingly, *AFFIRMED*.

BRETT, P. J., and BLISS, J., concur.