Robert Earl GLIDEWELL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–78–487.

Court of Criminal Appeals of Oklahoma.

May 4, 1983.

Robert A. Ravitz, Public Defender, Okl. County, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., C. Elaine Alexander, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant, Robert Earl Glidewell, was convicted of Murder in the First Degree, in violation of Laws 1976, 1st Ex.Sess., ch. 1, § 1, now 21 O.S.1981, § 701.7, in Oklahoma County District Court, Case No. CRF–78–521, pursuant to the verdict of the jury he was sentenced to death by a lethal injection, and he has appealed to this Court.

The evidence may be summarized as follows:

On February 1, 1978, a convenience store located at N.W. 27th Street and North Classen Blvd., in Oklahoma City, was robbed, and the clerk on duty, David Devol, was shot to death. Just before 3:00 a.m., that morning, Margaret Hinshaw, an acquaintance of the victim, called him on the telephone at the store. The victim told her that he was scared because Robert Glidewell was hanging around the store, and Dennis Glidewell was driving around the block. Hinshaw testified that the victim gasped over the telephone and a shot rang out. The witness rushed out of her apartment, located a half block from the store, to a vantage point from which she could see the grocery store. She saw a car belonging to Robert Glidewell, a tenant in her apartment complex, parked at the store. She and two other persons walked to the store where the victim's body was found behind the counter, the receiver of the telephone was on the floor near the body. Police were summoned.

Five .22 caliber shell casings and a .22 caliber slug were found near the counter. One cash register was standing open and had been emptied of currency, as was a safe under the counter. Two padlocks used to secure the safe were on the floor, opened and intact. The keys to the safe were on a ledge under the counter, a fact known to Robert Glidewell, who had been employed at the store until seven months prior to the killing.

The cause of death was determined to be gunshot wounds to the chest. Four bullet wounds caused massive hemorrhaging and loss of blood pressure. A fifth wound caused little hemorrhaging and was apparently inflicted while the wounded victim was dying on the floor behind the counter. Two slugs were removed from the body. Police were given the names of Robert

Glidewell and Dennis Glidewell, and a description of Robert Glidewell's vehicle, by witness Hinshaw.

At about 5:00 a.m. the morning of the crime, a car matching the description received by the police was stopped by a patrolman near the intersection of N.W. 36th Street and May Avenue, in Oklahoma City. When the driver identified himself as Robert Glidewell, he was arrested, as was his passenger, Kenneth Boutwell. The car was impounded and the two men were transported to the police station.

At the police station, the car was searched: Two .22 caliber bullets were found on the console, registration papers identifying Robert Glidewell as the owner were found in the glove compartment, two hundred seventy-one dollars ($271.00) in cash was stuffed in the springs beneath the car seat on the driver's side, and a .22 caliber semi-automatic rifle was seized from the trunk. Ballistics tests later identified the rifle as the murder weapon. Two days later, two hundred thirty-four dollars ($234.00) in cash was found in the springs beneath the car seat on the passenger's side.

Robert Glidewell was interviewed after his arrest by detectives and gave a written statement. He stated that he, Dennis Glidewell, Charles Moseley and Kenneth Boutwell, decided to rob the store. Moseley warned that no witnesses should be left. Kenneth Boutwell agreed to do the shooting. While the appellant held the door of the store open, Boutwell shot the clerk. The appellant then opened the registers and safe and took the money, which was divided by the four at a drive-in restaurant. They then separated and left in two cars. Moseley and Dennis Glidewell were arrested later that day in Prague, Oklahoma.

Charles Moseley testified on behalf of the State that, after deciding to rob the store, Robert and Dennis Glidewell said that the victim, David Devol, would have to die, since he knew them. Robert Glidewell opened the door to the store, and Boutwell fired at the clerk. Robert went into the store to the counter then rushed out and told Boutwell that the victim was still alive

and would have to be shot again. Boutwell returned to the store and shot the victim again as he lay behind the counter. Robert then took money from the cash registers. Moseley also testified as to how the money was divided.

The appellant took the stand in his own behalf and testified that he never expected the victim to be shot. However, he admitted that he discussed with the others the need to kill the victim and heard Boutwell volunteer. He also admitted that, when he saw the victim twitch after being shot, he told Boutwell that the victim was still alive, although he denied telling Boutwell to shoot the victim again.

I.

As his first assignment of error, the appellant contends that six veniremen were excluded for cause in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Four of the veniremen referred to by the appellant (Fields (V.T. 30); McIntire (V.T. 33 and 34); Hopkins (V.T. 95–96); and Crooks (V.T. 115–116)) clearly and unequivocally expressed their inability to impose the death penalty, and were properly excluded under *Witherspoon.* With respect to the fifth juror, Hare, the appellant argues that the juror did not make "unmistakably clear" his unfitness under *Witherspoon.* After testifying that he could not agree to a verdict of death without doing violence to his conscience, Mr. Hare was examined as follows:

THE COURT: Alright, if found beyond a reasonable doubt that the defendant was guilty of Murder in the First Degree, and if under the evidence, facts and circumstances of the case the law would permit you to consider a sentence of death, are your reservations about the death penalty such that regardless of the law, the facts and the circumstances of the case you would not inflict the death penalty?

MR. HARE: I don't believe in capital punishment, so I think that should cover the whole thing.

THE COURT: Alright, Mr. Hare, you may step down for cause. (V.T. 25).

Read in context, the venireman's position was "unmistakably clear", and he was properly excluded. As for the sixth juror, McNeely, the appellant argues that the prosecutor and trial court went too far in their questioning. The record demonstrates that the juror vacillated in his responses to the questioning, and the district attorney and judge pressed him for a "yes" or "no" answer. The juror finally indicated that he could not consider the death penalty.[1] The continued inquiry was warranted in view of the juror's hesitant and ambiguous responses. This assignment of error is without merit.

## II.

■ As his second assignment of error, the appellant contends that there is no basis in Oklahoma law for excluding veniremen from the jury whose views on capital punishment preclude them from considering the death penalty. He argues that 22 O.S.1981, § 660,[2] authorizes challenge only where the ability to impartially decide guilt, as distinguished from ability to determine sentence, is affected. This Court, from as early as 1921, has held that this ground of challenge encompasses those whose beliefs prevent them from returning a verdict of guilty with the death penalty attached. See, *Cardwell v. State,* 20 Okl.Cr. 177, 201 P. 817 (1921), construing Section 5859 Revised Laws 1910, the forerunner of Section 660. See also, *Gibson v. State,* 501 P.2d 891 (Okl. Cr.1972). The Legislature has long acquiesced in this interpretation. This assignment of error is without merit.

## III.

■ Next, the appellant argues that the trial court committed reversible error in admitting State's Exhibit No. 1, a color photograph of the victim lying dead on the floor of the convenience store. As we held

1. The voir dire transcript reads in part as follows:

   MR. COATS: Mr. McNeely, do you believe and agree in the idea that the death penalty is a necessary part of our law?

   MR. MCNEELY: This is easy for me to say or no [sic] when the situation is not in my face. But, with the situation in my face I honestly don't know. I've thought about it all morning.

   MR. COATS: I'm sure you have, let me just ask this question, in a case where the law and evidence warrant, in a proper case, could you and this is the important part of the question, could you, without doing violence to your conscience, agree to a verdict imposing the death penalty?

   MR. MCNEELY: To a certain extent my conscience is going to be on it anyway. I don't know, I just don't know. I think that taking the life of a man is not in the hands of a man.

   MR. COATS: Well, so how would you answer this question then, no or yes?

   MR. MCNEELY: Probably yes.

   MR. COATS: If you found beyond a reasonable doubt that the defendant was guilty of murder in the first degree and that if under the evidence, facts and circumstances of the case the law would permit you to consider a sentence of death, are your reservations about the death penalty such that regardless of the law, the facts and circumstances of the case you would not inflict the death penalty?

   MR. MCNEELY: If I did it would be one out of a million.

   MR. COATS: What do you mean one out of a million?

   MR. MCNEELY: I mean it would have to be a special, special, special thing. I mean, I can't explain what I mean.

   THE COURT: Well, are you telling the Court that you could or could not? That's what we need to know.

   MR. MCNEELY: I don't know until the situation comes up to my face. I don't know is the most honest answer I can give.

   THE COURT: All the Court is asking you, or Mr. Coats, is asking you is if in a proper case where the law and evidence was such, now I'll just put it in simple terms, could you vote for the death penalty?

   MR. MCNEELY: Well, sir, what I'm trying to say, I've never had the situation in my face before.

   THE COURT: Neither has anybody else on this jury, I don't think.

   MR. MCNEELY: I have to say no, then.

   THE COURT: You could not. Alright, you may step down.

2. Title 22 O.S.1981, § 660 provides in pertinent part as follows:

   A challenge for implied bias may be taken for all or any of the following cases, and for no other:

   8. If the offense charged be punishable with death, the entertaining of such conscientious opinions as would preclude his finding the defendant guilty of, in which case he shall neither be permitted nor compelled to serve as a juror.

in *Glidewell v. State,* 626 P.2d 1351 (Okl.Cr. 1981), this photograph had probative value in that it showed that the victim was in a prone position when the fifth bullet was fired, and was properly admitted into evidence. This assignment of error is without merit. See, *Glidewell,* supra, and cases cited therein; and, *Boutwell v. State,* 659 P.2d 322, (Okl.Cr.1983).

### IV.

Appellant urges, as his fourth assignment of error, that State's Exhibits No. 15, 18 and 26 were the fruits of an illegal search, and should have been suppressed. (Exhibits No. 15 and 26 are the cash found under the seat in appellant's car, and Exhibit No. 18 (referred to in appellant's brief as No. 29) is the .22 caliber automatic rifle found in the trunk of appellant's car.) He contends that the warrantless search was neither a valid inventory search nor a valid automobile search under *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). We do not agree.

In the instant case, the arresting officer, Charles Brown, testified that at approximately 5:00 a.m. on February 1, 1978, he was patrolling near 50th and North May Avenue in Oklahoma City when he received a radio bulletin which directed officers to "be on the look-out" for a suspect or suspects in a 1969 Dodge Charger, brown with a light top, who were wanted in an armed robbery and murder which had occurred earlier that morning. Officer Brown testified he had occasion to observe the above described vehicle at 36th and North May Avenue, and he arrested the appellant, who was the driver, and co-defendant, Boutwell, who was a passenger. The vehicle was promptly impounded and inventoried pursuant to police department policy. The officer clearly possessed probable cause to arrest the appellant in response to the police bulletin. *Nealy v. State,* 636 P.2d 378 (Okl. Cr.1981), and cases cited therein; see also, *United States v. Ross,* —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The initial arrest was lawful and the subsequent inventory search was legal. See, *Shorney v.*

*State,* 524 P.2d 69 (Okl.Cr.1974); compare, *Kelly v. State,* 607 P.2d 706 (Okl.Cr.1980). This assignment is without merit.

### V.

Appellant contends, as his fifth assignment of error, that the trial court erred in refusing to suppress his confession. Testimony of two policemen at an in-camera hearing demonstrates that the appellant was given his *Miranda* warnings; and further, no threats, coercion, promises or force were used to induce the statement, which the appellant read and signed on each page. Additionally, at one point prior to the giving of the statement, the officers left Glidewell alone in an office for five minutes with a telephone on the desk in front of him. The appellant had been advised that the charge against him was First Degree Murder, punishable by death. As we stated in *Dennis v. State,* 561 P.2d 88 (Okl.Cr.1977), citing from *Castleberry v. State,* 522 P.2d 257 (Okl.Cr.1974):

> When there is sufficient evidence that the defendant knowingly and intelligently waived his constitutional right against compelled self-incrimination, this Court will not disturb the trial court's ruling allowing into evidence the defendant's confession.

Furthermore, on cross-examination the appellant admitted that what he said in the statement was true. The trial judge also instructed the jury, in Instruction No. 17, that they could disregard the confession if they believed it was not freely and voluntarily given. This procedure has been approved by this Court on numerous occasions. See, *Glidewell,* supra, and cases cited therein. A review of the record amply supports the trial court's determination to allow the introduction of the confession.

### VI.

Since the appellant's sixth, seventh and eighth assignments of error challenge the constitutionality of the Oklahoma death penalty statutes, we shall consider them together.

■ Initially, in his sixth assignment of error, Glidewell argues that 21 O.S.1981, § 701.9 is violative of the Eighth and Fourteenth amendments to the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution, in that the death penalty violates due process and equal protection clauses and constitutes cruel and unusual punishment. As we have previously noted, the U.S. Supreme Court has upheld the constitutionality of capital punishment in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); and, *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Our penalty statute is substantially similar to Georgia's and Florida's which the Supreme Court held in *Gregg,* supra, and *Proffitt,* supra, not to be violative of the Eighth and Fourteenth Amendments. *Boutwell,* supra; *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980); *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980). Appellant's argument is without merit.

■ Next, the appellant urges this Court to adopt the position of the Massachusetts Supreme Court as announced in *Commonwealth v. O'Neal,* 367 Mass. 440, 327 N.E.2d 662 (1975), and 369 Mass. 242, 339 N.E.2d 676 (1975), and hold that the State has failed to demonstrate that the death penalty fulfills a compelling State interest which cannot be gratified by less drastic means; this we decline to do. See, *State of New Mexico ex rel Serna v. Hodges,* 89 N.M. 351, 552 P.2d 787 (Okl.Cr.1976).

■ In another assignment of error, the appellant argues that his privately retained trial counsel, Mr. J. Malone Brewer, failed to provide him with effective assistance of counsel. We note that the record is void of any indication that the appellant was dissatisfied with his attorney until after the trial proceedings were completed. A thorough review of the record reveals that Mr. Brewer acted in a reasonably competent manner sufficient to meet our standards in *Johnson v. State,* 620 P.2d 1311 (Okl.Cr. 1980), or in *Eide v. State,* 551 P.2d 275 (Okl.Cr.1976). This assignment of error is without merit.

Having addressed the appellant's assignments of error which pertain to the first stage of the trial, and finding the same to be free from error which would require modification or reversal of the jury's determination of the guilt of the appellant, we next consider the assignments of error alleged to have occurred in the second or "punishment" stage of the proceedings.

## VII.

■ In his tenth assignment of error, the appellant argues that the trial court erred during the second stage of the trial by submitting to the jury the aggravating circumstance that:

... the person committed the murder for remuneration or the promise of remuneration or employed another to commit the murder for remuneration or the promise of remuneration; ... 21 O.S.1981, § 701.12(3).

This Court has addressed the very issue now raised in two recent cases, *Johnson v. State,* 665 P.2d 815 (Okl.Cr.1982); and, *Boutwell,* supra. Both *Johnson* and *Boutwell,* were decided under factual situations that are indistinguishable from those in the case at bar, and for the reasons stated in *Johnson* and *Boutwell,* we find that the submission of the aggravating circumstances of remuneration to the jury in the instant case is improper. To hold otherwise would cause the armed robber-murderer to be placed in a situation where he would be automatically guilty of an aggravating circumstance.

In view of our determination that reversible error occurred in the punishment stage when the trial court submitted the aggravating circumstance of remuneration to the jury, we need not address the other errors which the appellant alleges occurred in the second stage of his trial. (Appellant's assignments of error numbered eight, nine and eleven through sixteen).

For the reasons stated by Judge Cornish in *Johnson,*[3] supra, handed down on March 12, 1982, (later vacated and withdrawn on

---

**3.** See Appendix.

rehearing), I would AFFIRM the jury's verdict of guilty, vacate the sentence of death and REMAND the cause to the district court solely for a new sentencing proceeding, since no errors occurred in the first stage of the trial. However, in light of the views of my colleagues the judgment of guilty is AFFIRMED and the sentence of death is MODIFIED to a term of life imprisonment, and as so MODIFIED, the judgment and sentence is AFFIRMED.

CORNISH and BRETT, JJ., concur in part, dissent in part.

## APPENDIX

Judge Cornish stated in *Johnson,* supra, (opinion withdrawn on rehearing) as follows:

The question now becomes what is the appropriate procedure for this Court to follow. We find that there are three possible procedures available to this Court. First, we could set the sentence aside and remand the case for modification to life imprisonment. Second, this Court could attempt to determine whether the error was harmless beyond a reasonable doubt. A third possibility would be to remand the case to the trial court to impanel a new jury for a resentencing proceeding.

We will first address the propriety of attempting to determine whether the consideration by the jury of the improper aggravating circumstance was harmless error. Where an appellant's life is at issue this Court is unwilling to speculate as to whether an improper sentencing consideration had any impact on the jury's decision to recommend the death penalty. In the sentencing proceeding the jury is required to weigh the appropriate aggravating circumstances against the relevant mitigating circumstances. See 21 O.S.Supp.1980, § 701.11. Based upon this weighing process the jury must determine whether the defendant should

receive the death penalty. The jury's discretion must be channeled by clear and objective standards that make the death penalty rationally reviewable. *See Woodson v. North Carolina,* 428 U.S. 280, 303, 96 S.Ct. 2978, 2990, 49 L.Ed.2d 944 (1976). We conclude that it is impossible for an appellate court to find beyond a reasonable doubt that the jury's erroneous consideration of an aggravating circumstance was harmless error.[1]

We now consider whether this Court has the statutory authority to remand a death penalty case to the trial court to conduct a resentencing proceeding before a new jury. We find that this Court has the authority to remand for a new sentencing trial to correct errors which occurred in the sentencing proceeding.

Title 21 O.S.Supp.1980, § 701.13(E) provides in part:

*In addition* to its authority regarding correction of errors, the court, with regard to review of death sentences, shall be authorized to:

1. Affirm the sentence of death; or

2. Set the sentence aside and remand the case for modification of the sentence to imprisonment for life. [emphasis added.]

This statute specifically states that the authority provided in this section is in addition to our authority to correct errors. This Court's powers to correct error are enumerated in 22 O.S.1981, § 1066. This statute provides '[t]he Appellate Court may reverse, affirm or modify the judgment appealed from, and may, if necessary or proper, order a new trial. In either case, the cause must be remanded to the court below, with proper instructions, and the opinion of the court, within the time, and in the manner, to be prescribed by rule of the court.'

We find that 21 O.S.Supp.1980, § 701.-13(E), read in conjunction with 22 O.S. 1971, § 1066, provides this Court with the

---

1. *See, Bufford v. State,* 382 So.2d 1162 (Ala.Cr. App.1980); and *State v. Cherry,* 298 N.C. 86, 257 S.E.2d 551 (1979), in which both Alabama and North Carolina refused to speculate as to

the effect an improper aggravating circumstance had on the jury's decision to recommend the death penalty.

statutory authority to remand this case for a new sentencing proceeding.[2] Title 21 O.S.Supp.1980, § 701.10, makes it clear that the sentencing proceeding is separate and distinct from the initial trial adjudicating the defendant's guilt. Section 701.10 states:

Upon conviction or adjudication of guilt of a defendant of murder in the first degree, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or to life imprisonment. The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable without presentence investigation ... In the sentencing proceeding, evidence may be presented as to any mitigating circumstances or as to any of the aggravating circumstances enumerated in this act. Only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible.

Therefore, we conclude that this case may be remanded solely for a resentencing trial. At the resentencing proceeding the district court shall impanel a new jury. After voir dire has been completed the sentencing proceeding shall be conducted in accordance with Title 21 O.S. Supp.1981, §§ 701.10–701.12. The State may present relevant evidence in regard to any applicable aggravating circumstances enumerated in Section 701.12 of which the State has notified the defend-

ant pursuant to Section 701.10. The defendant may present evidence of any mitigating circumstances.

CORNISH, Judge, concurs in part and dissents in part:

I concur that the judgment of guilt must be affirmed, however I must dissent to remanding the case solely for a resentencing trial, for the reasons stated in the Opinion on Rehearing in *Johnson v. State*, 665 P.2d 826 (Okl.Cr.1983). I therefore respectfully submit that due to the infirm aggravating circumstance of murder for remuneration the sentence should be modified to life imprisonment, as was done on rehearing in *Johnson*, supra, and in *Boutwell v. State*, 659 P.2d 322 (Okl.Cr.1983).

BRETT, Judge, concurs in part and dissents in part:

I concur that this conviction should stand; but because there are no statutory provisions for remanding this case to another jury for reassessment of the punishment, I would modify the sentence to life imprisonment and affirm the judgment and sentence as modified.

---

**2.** Several jurisdictions have enacted statutory provisions for the appellate court to remand a case for a new sentencing proceeding. See, e.g., Ala.Code Supp.1981, Tit.13A, § 5–53, which mandates:

(d) After performing the review specified in this section, the Alabama court of criminal appeals, subject to review by the Alabama Supreme Court, shall be authorized:

(1) Affirm the sentence of death;

(2) Set the sentence of death aside and remand to the trial court for correction of any errors occurring during the sentence proceedings and for imposition of the appropriate penalty after any new sentence proceedings that are necessary, provided that such errors shall not affect the determination of guilt and shall not preclude the imposition of

a sentence of death where it is determined to be proper after any new sentence proceedings that are deemed necessary; or

(3) In cases in which the death penalty is deemed inappropriate under subdivision (b)(2) or (b)(3) of this section, set the sentence of death aside and remand to the trial court with directions that the defendant be sentenced to life imprisonment without parole.

*See also*, Ga.Code, § 27–2537 (Supp.1978); Md. Code Ann., Art 27, § 414(f)(ii) (Supp.1978); Mo.Rev.Stat. § 565.014 (Supp.1977); Mont. Rev.Codes Ann. § 94–5–303 (Supp.1977); S.C. Code § 16–3–25 (Supp.1980); Wyo.Stat. § 6–4–102(g) (Supp.1977). *See also, Nipps v. State*, 626 P.2d 1349 (Okl.Cr.1981).